## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:15-cv-278-RJC

| | | |
|---|---|---|
| **JAMES RONALD PEGGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **ORDER** |
| | ) | |
| **BRIAN SHIPWASH, DAVID WILSON,** | ) | |
| **ROSSABI BLACK SLAUGHTER, P.A.,** | ) | |
| **AARON B. ANDERSON, TRUSTEE** | ) | |
| **SERVICES OF CAROLINA, LLC,** | ) | |
| **BROCK & SCOTT, PLLC, U.S. BANK** | ) | |
| **TRUST NATIONAL ASSOCIATION** | ) | |
| **a/k/a U.S. BANK NATIONAL** | ) | |
| **ASSOCIATION, WELLS FARGO** | ) | |
| **HOME MORTGAGE a/k/a WELLS** | ) | |
| **FARGO BANK NATIONAL** | ) | |
| **ASSOCIATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |

**THIS MATTER** comes before the Court on the following: (1) Defendants Wells Fargo

Bank, N.A. ("Wells Fargo") and U.S. Bank, National Association's ("USBNA") Motion to

Dismiss, supporting memoranda, and exhibits, (Doc. Nos. 15, 16 to 16-11, 20); (2) Defendants

David Wilson and Rossabi Black Slaughter, P.A.'s ("RBS") Motion to Dismiss, supporting

memorandum, and exhibit, (Doc. Nos. 18, 19, 19-1); (3) Defendants Aaron B. Anderson

("Anderson"), Trustee Services of Carolina, LLC ("TSC"), and Brock & Scott, PLLC's ("Brock

& Scott") (collectively, "Trustee Defendants") Motion to Dismiss, supporting memorandum, and

exhibit, (Doc. Nos. 21, 22, 22-1); (4) Defendant Davidson County Clerk of Court Brian

Shipwash's ("Shipwash") Motion to Dismiss and supporting memorandum, (Doc. Nos. 30, 31);

(5) pro se Plaintiff James Ronald Peggs's ("Plaintiff") responses to the motions, (Doc. Nos. 17, 23, 33, 34); (6) Plaintiff's "Petition for Chancellor at Chamber to Seal Case and Pro Confesso and Prayer for Relief," (Doc. No. 24); (7) Plaintiff's "Petition for Chancery in Chamber and Responds to Defendant(s)," (Doc. No. 26); (8) Plaintiff's "Petition for Pro Confesso and Rescheduling Chancery in Chamber," (Doc. No. 33); and (9) Plaintiff's "Affidavit in Support for Grant of Relief and Process," (Doc. No. 34).

## I.   BACKGROUND

Plaintiff initiated this action with the filing of a "Complaint" on June 25, 2015, (Doc. No. 1: Complaint), against Shipwash, RBS, Anderson, TSC, Brock & Scott, USBNA, and Wells Fargo (collectively, "Defendants"). Accepting the allegations of the pro se Complaint as true and giving it the most liberal interpretation, the Complaint appears to challenge a state foreclosure proceeding. (Id. at 5). Plaintiff states that the Trustee Defendants "filed for a hearing before the Clerk of Superior Court of Davidson County Brian Shipwash pursuant to North Carolina General Statutes . . . § 45-21.16 claiming that [USBNA] ha[d] instructed [the Trustee Defendants] to institute foreclosure proceedings, pursuant to the Promissory Note secured by said Deed of Trust."[1] (Id. at 3). Wells Fargo and USBNA clarify in their Motion to Dismiss, (Doc. No. 16), that Plaintiff's Complaint relates to a note and deed of trust executed by William R. Jones and Shannon H. Jones in favor of Wells Fargo in July 2000 (the "Note" and "Deed of Trust"). (Doc. No. 16 at 2). The security under that Deed of Trust was property located at 103 N. Silver Street, Lexington, North Carolina 27292. (Id.). On February 9, 2015,

---

[1] The Complaint fails to identify any "Promissory Note" and fails to clarify the "Deed of Trust" to which it refers. It also fails to allege Plaintiff's relation to either document or to this lawsuit in general, making it appear that Plaintiff may lack standing to bring this suit at all.

the Davidson County Clerk of Court, Brian Shipwash, entered an order allowing foreclosure on the property (the "Foreclosure Order") because the Note was in default. (Doc. No. 16-8). The Foreclosure Order was appealed to Superior Court, and on March 30, 2015, the Superior Court dismissed the appeal and allowed the foreclosure sale to proceed. (Doc. No. 16-9). No injunction was obtained nor was a bond paid to stay the effectiveness of the Foreclosure Order, and the property was sold in a foreclosure sale on May 18, 2015. (Doc. No. 16-10). The foreclosure sale was completed and a Notice of Foreclosure was filed on June 19, 2015. (Doc. Nos. 16-10, 16-11).

Plaintiff's Complaint alleges that USBNA "is neither the Beneficiary/Lender nor Substitute Trustee," that Shipwash lacked jurisdiction to hear the foreclosure proceeding, and that RBS filed documents in the foreclosure proceeding without providing any proof that the documents were legitimate. (Complaint at 4–5). The Complaint also alleges that each defendant breached the deed of trust, neglected duties as trustees, and committed fraud against Plaintiff. (Id. at 5). Therefore, Plaintiff prays "that Foreclosure Sale held on May 18, 2015 to be null and void as well as the Foreclosure Hearing held by Clerk of Superior Court Brian Shipwash and/or any other order(s) to be lack of applicable law and jurisdiction. And that Complainant is granted Quiet Title and removal of all cloud title including the Deed of Trust but not limited to. [sic]" (Id.).

Wells Fargo and USBNA filed their Motion to Dismiss on July 31, 2015. (Doc. No. 15). RBS filed its Motion to Dismiss on August 7, 2015. (Doc. No. 18). The Trustee Defendants filed their Motion to Dismiss on August 11, 2015. (Doc. No. 21). Shipwash filed his Motion to Dismiss on October 2, 2015. (Doc. No. 30). Plaintiff filed his "Petition for Chancellor at Chamber to Seal Case and Pro Confesso and Prayer for Relief," (Doc. No. 24), on September 11,

2015; his "Petition for Chancery in Chamber and Responds to Defendant(s)," (Doc. No. 26), on

September 24, 2015; his "Petition for Pro Confesso and Rescheduling Chancery in Chamber,"

(Doc. No. 33), on October 15, 2015; and his "Affidavit in Support for Grant of Relief and

Process," (Doc. No. 34), on January 12, 2016.  Although not specifically captioned as responses

to the motions to dismiss, Plaintiff has responded to each motion to dismiss in either his

"Petitions," (Doc. Nos. 24, 26, 33), his "Affidavit," (Doc. No. 34), or his other miscellaneous

filings, (Doc. Nos. 17: "The Prayer for Relief and Process;" 23: "Maxim and Principal").[2]  The

motions have been fully briefed and the issues are ripe for adjudication.

## II.    DISCUSSION

The existence of subject-matter jurisdiction is a threshold issue a court must address

before considering the merits of any case.  See Steel Co. v. Citizens for a Better Env't, 523 U.S.

83, 88–89 (1998); Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).

Where the Court has subject-matter jurisdiction, it may hear the merits of a claim; if it lacks

jurisdiction, it has no authority to hear the case.  Fed. R. Civ. P. 12(h)(3) ("Whenever it appears

by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter,

the court shall dismiss the action.").  "The subject-matter jurisdiction of federal courts is limited

and the federal courts may exercise only that jurisdiction which Congress has prescribed."  Chris

v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000).  Subject-matter jurisdiction is so limited that federal

"[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists,

---

[2] Generally, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Court advises
pro se plaintiffs of the burden they carry in responding to a defendant's motion to dismiss when
such a plaintiff has failed to respond.  Plaintiff has responded to the motions to dismiss through
his various filings; therefore, the Court finds that a Roseboro Notice is not necessary in this
instance.

even when no party challenges it." Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010). "No party can waive the defect, or consent to [subject-matter] jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own." Wis. Dept. of Corrections v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 671 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt."). The party seeking federal jurisdiction has the burden of proving that subject-matter jurisdiction exists. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Congress has authorized federal courts to exercise subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal district courts, however, have no authority to hear appeals of the decisions of state courts; only the Supreme Court possesses such authority. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Additionally, federal district courts have no jurisdiction to hear "challenges to state court decisions in particular cases arising out of judicial proceedings." D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 483 n.16, 486 (1983). These rulings form the basis of the Rooker-Feldman doctrine. Where it applies, it bars federal district courts from hearing cases.

The Rooker-Feldman doctrine applies not only to issues actually presented to and decided by a state court but also to issues that are "inextricably intertwined" with questions ruled on by a state court regardless of whether those issues or claims were raised before the state court. Id. A federal claim is inextricably intertwined with a state court decision where, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual." Jordahl v. Democratic Party of Va., 122 F.3d 192, 202 (4th Cir. 1997). As such, this Court and

other courts have held that <u>Rooker-Feldman</u> prohibits a plaintiff from asserting federal claims

attacking a state court foreclosure action.  <u>See, e.g.,</u> <u>Dillard v. Bank of N.Y.</u>, 476 F. App'x 690

(10th Cir. 2012); <u>Steele v. Capital One Home Loans, LLC</u>, No. 3:13-cv-704-RJC-DSC, 2014

WL 3748928 (W.D.N.C. July 30, 2014), <u>aff'd</u>, 594 F. App'x 215 (4th Cir. 2015); <u>Radisi v. HSBC</u>

<u>Bank USA, Nat. Ass'n</u>, No. 5:11-cv-125-RLV, 2012 WL 2155052 (W.D.N.C. June 13, 2012),

<u>aff'd</u>, 479 F. App'x 468 (4th Cir. 2012).

Plaintiff's Complaint seems to contend that Defendants fraudulently brought a

foreclosure action against him and that USBNA is not the valid holder of the Note.  Although

Plaintiff fails to enumerate any specific cause of action, his Complaint is based entirely upon

these core allegations.  However, those are precisely the issues that the state court has already

decided.  (Doc. Nos. 16-10, 16-11).  Pursuant to North Carolina General Statute section 45-

21.16(d), one of the elements a North Carolina court must find to authorize foreclosure is that the

party seeking to foreclose is the lawful holder of a valid debt.  That statute goes on to provide

that "[t]he act of the clerk in so finding or refusing to so find is a judicial act . . . ."  N.C. Gen.

Stat. § 45-21.16(d1).  Consequently, USBNA's status as the lawful holder of the Note was

judicially established by the state court's Foreclosure Order.  (Doc. No. 16-10).  Consequently,

the Court finds that any ruling by this Court in favor of Plaintiff as to any claim attacking the

foreclosure would require the Court to overturn the state court's Foreclosure Order, which

<u>Rooker-Feldman</u> expressly prohibits.

As North Carolina statute provides, the Foreclosure Order is properly appealed in the

state court system.  N.C. Gen. Stat. § 45-21.16(d1).  To the extent that Plaintiff's Complaint

alleges fraud against Defendants related to the foreclosure proceedings, such issues are properly

addressed on appeal in state court.  Plaintiff had the opportunity to and did in fact appeal the

Foreclosure Order, but the appeal was dismissed. Plaintiff's opportunity to show Defendants'

fraud and pursue those claims, therefore, was in the state court action. See Dillard, 476 F. App'x

690 (dismissing a fraud claim of improper documents and deceptive representations in a

foreclosure action under the Rooker–Feldman doctrine). Plaintiff cannot now attempt to

collaterally attack the Foreclosure Order through this federal lawsuit.

Accordingly, the Court finds that any claims attacking the Foreclosure Order are barred

by the Rooker-Feldman doctrine because they are inextricably intertwined with the state-court

judgment. Therefore, the Court lacks subject-matter jurisdiction, and Plaintiff's Complaint must

be dismissed.

A. Equity Jurisdiction

Plaintiff argues at length in each of his filings that this is a suit in equity. He asserts that

Defendants' motions should be dismissed and that the Court should, pursuant to its "equity

jurisdiction," grant Plaintiff his "Bill in Equity" because Defendants did not come in with clean

hands. (Doc. Nos. 17 at 2–3; 23 at 3–4; 24 at 1; 26 at 2; 33 at 1–5; 34 at 5). Plaintiff contends

that "the Federal courts keep entirely separate, actions at law and suits in equity," and that

between the two sides of the court "there is no possible connection." (Doc. No. 17 at 1). Under

his equitable theory, Plaintiff seems to conclude that the laws and statutes of the United States

and North Carolina do not apply to his Complaint, which he labels a "Bill in Equity." Because

the law is "moot" in a court of equity and does not apply, (Doc. No. 33 at 3), and because

Defendants "have failed to make any defence [sic] to complainant's bill as required by the rules

of Equity," (Doc. No. 24 at 2), Plaintiff contends that he is entitled to "a judgment pro confesso"

and that "the Court has no right to deny such a judgment," (Doc. No. 33 at 5).

The enactment of the Federal Rules of Civil Procedure in 1938 abolished the multiple

forms of action that existed under common law pleading. Fed. R. Civ. P. 2. "Actions are no longer brought as actions at law or suits in equity. Under the Rules there is only one action—a 'civil action'—in which all claims may be joined and all remedies are available. Purely procedural impediments to the presentation of any issue by any party, based on the difference between law and equity, was destroyed." Ross v. Bernhard, 396 U.S. 531, 539–40 (1970). Consequently, "the same court may try both legal and equitable causes in the same action." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 508 (1959). The "days of the divided bench" are now a faded memory. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 224–25 (2002) (Ginsburg, J., dissenting). Accordingly, contrary to Plaintiff's arguments, there is no separate "equity jurisdiction" under which Plaintiff may pursue his "Bill of Equity" before this Court. The Court finds, therefore, that Plaintiff's equity arguments have no merit and his Complaint must be dismissed for lack of subject-matter jurisdiction.

Having so determined, each defendant's motion to dismiss must be granted pursuant to Federal Rule of Civil Procedure 12(b)(1), and the Court need not and may not reach the merits of Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) through 12(b)(6). Furthermore, having found that the Court lacks subject matter jurisdiction over this matter, Plaintiff's "motions" for judgment or relief, whether entitled as "Petitions" or otherwise, must all be dismissed as moot.

B. Motion to Seal

Plaintiff also requests that his "Bill of Equity" be "seal[ed] from the public and the press, not to be reviewed on any public website, government or private, including 'PACER' and never to be [in] publication." (Doc. No. 24 at 2). The pleadings at issue in this case are the type to which the public has a presumptive right of access under the First Amendment. See Nixon v.

Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978). "When the First Amendment provides a right of access, a district court may restrict access only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." Virginia Dep't of State Police v. Washington Post, 386 F.3d 567, 575 (4th Cir. 2004) (internal quotation marks omitted). The party seeking to seal documents bears the burden to overcome the public's right to access those documents. Doe v. Pub. Citizen, 749 F.3d 246, 271–72 (4th Cir. 2014). Mere conclusory assertions of a compelling interest are insufficient to meet this burden. Press-Enter. Co. v. Superior Ct. of Cal., Riverside Cty., 478 U.S. 1, 15 (1986). Moreover, this Court's Local Rules of Practice and Procedure set forth specific requirements for motions to seal. See Local Rule 6.1.

Plaintiff has not complied with the Local Rules of this Court governing the sealing of documents nor has he alleged any compelling interest to overcome the public's right to access the documents in this case. Therefore, Plaintiff's Motion to Seal is denied.

III. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Defendants Wells Fargo Bank, N.A. and U.S. Bank, National Association's Motion to Dismiss, (Doc. No. 15), is **GRANTED**;

2. Defendants David Wilson and Rossabi Black Slaughter, P.A.'s Motion to Dismiss, (Doc. No. 18), is **GRANTED**;

3. Defendants Aaron B. Anderson, Trustee Services of Carolina, LLC, and Brock & Scott, PLLC's Motion to Dismiss, (Doc. No. 21), is **GRANTED**;

4. Defendant Brian Shipwash's Motion to Dismiss, (Doc. No. 30), is **GRANTED**;

5. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED with prejudice**;

6. Plaintiff's "Petition for Chancellor at Chamber to Seal Case and Pro Confesso and Prayer for Relief," (Doc. No. 24), is **DENIED**;

7. Plaintiff's "Petition for Chancery in Chamber and Responds to Defendant(s)," (Doc. No. 26), is **DISMISSED as moot**;

8. Plaintiff's "Petition for Pro Confesso and Rescheduling Chancery in Chamber," (Doc. No. 33), is **DISMISSED as moot**;

9. Plaintiff's "Affidavit in Support for Grant of Relief and Process," (Doc. No. 34), is **DISMISSED as moot**; and

10. The Clerk of Court is directed to close this case.

Signed: March 3, 2016

Robert J. Conrad, Jr.
United States District Judge